IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WACOH COMPANY, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 10-617-RGA |
| KIONIX INC., et al., | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

January 9, 2012
Wilmington, Delaware

ANDREWS, U.S. DISTRICT JUDGE:

Wacoh, a Japanese corporation with a principal place of business in Japan, has sued five companies for patent infringement. The cases against two of the defendants have resolved, leaving as defendants Kionix, a Delaware corporation with a principal place of business in New York City, New York, VTI Technologies, Inc., a Delaware corporation alleged to have a principal place of business in Michigan, and Invensense, a Delaware corporation with a principal place of business in Sunnyvale, California.

Wacoh holds U.S. patent nos. 6,282,956 ("Multi-Axial Angular Velocity Sensor"), 6,865,943 ("Angular Velocity Sensor"), and 6,314,823 ("Force Detector and Method of Manufacturing the Same"). (Complaint, ¶¶ 9, 10, 12). Kionix is alleged to infringe the "Force Detector" patent by making and selling sensors (in particular, the Kionix KXSD9) capable of detecting force. (Complaint, ¶ 18). VTI Technologies is alleged to infringe the two "Angular Velocity" patents by making and selling sensors (in particular, the VTI SCC1300-D02) capable of detecting angular velocity. (Complaint, ¶ 19). Invensense is alleged to infringe the two "Angular Velocity" patents by making and selling sensors (in particular, the Invensense ITG-3200) capable of detecting angular velocity. (Complaint, ¶ 20). The three defendants have answered the complaint. In its answer, VTI Technologies asserted that its principal place of business is in Pasadena, California.

Kionix has filed a motion requesting severance and transfer of the case against it to the Northern District of New York. (D.I. 38). VTI and Invensense have filed a joint motion to transfer the cases against them to the Northern District of California. (D.I. 41). The motions have been fully briefed, and orally argued.

Kionix argues that it is misjoined under Federal Rule of Civil Procedure 20(a)(2), and that the case against it should be severed under Federal Rule of Civil Procedure 21. Rule 20(a)(2) states that:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Thus, there are two conditions that need to be met for joinder of defendants. The complaint alleges Kionix infringes one patent held by Wacoh, and that VTI and Invensense infringe two other patents held by Wacoh. There is no allegation that Kionix has any corporate or business relationship to the other two defendants. The identified infringing products are different. There is no request for joint and several liability. Wacoh alleges that the patents have the same inventor and involve some of the same scientific principles. Wacoh alleges that common questions of law and fact are therefore likely to be raised in the litigation. (Kionix does not contest this.) Wacoh further alleges that these common questions of law and fact therefore mean that the case involves "the same transaction, occurrence, or series of transactions or occurrences."

I do not accept Wacoh's argument. First, it does not strike me as consistent with common English usage that A committing a tort involving P's property B by means of C could be said to be part of the "same transaction, occurrence, or series of transactions or occurrences"[1] as D committing a tort involving P's property E by means of F. Second, there is no caselaw support for Wacoh's argument. There is a split of authority over the correctness of joining two patent defendants who are alleged to have infringed the same patent(s) with different products.

---

[1] I interpret "same" to modify not only "transaction, occurrence" but also "series of transactions or occurrences."

*Compare Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417 (D.Del. 2004) (two patents); *Androphy v. Smith & Nephew, Inc.*, 31 F.Supp.2d 620, 623 (N.D. Ill. 1998) (one patent); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch*, 564 F.Supp. 1358, 1370-71 (D.Del. 1983) (one patent), *with SRI International, Inc., v. Internet Security Systems, Inc.*, 2005 WL 851126, *4 (D.Del. 2005) (multiple patents); *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456-57 (E.D. Tex. 2004) (one patent). These cases, however, each involve suing different defendants alleging infringement of at least one patent in common. At oral argument, counsel for Wacoh was asked if he could point to any decision involving a case factually analogous to this one, and the only case he could cite was *SRI*.[2] (D.I. 61, pp. 28-29). Thus, I find that the defendant Kionix is misjoined with the other defendants.

When a party is misjoined, the remedy is not dismissal. Fed. R. Civ. Pro. 21. Instead, the case against the misjoined defendant – Kionix – should be severed.

I now consider the motions to transfer. The statutory authority for transferring the case is § 1404(a) of Title 28, which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Kionix, VTI, and Invensense have the burden of establishing the need for transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The first question is, could the case have been brought in the Court to which transfer is sought? Kionix has shown that its principal place of business is in Ithaca, New York, in the

---

[2] The allegation in *SRI* was that one defendant had infringed four of the plaintiff's patents, and that the second defendant had infringed two of the same four patents.

-4-

Northern District of New York. (D.I. 40, Galvin Decl. ¶ 4).³   VTI's principal place of business is in Pasadena, California (D.I. 45, Smyser Decl. ¶ 3),⁴ which is not in the Northern District of California.  VTI's principal place of business being in California, and its sales activities in the Northern District of California being significant, however, would have given the Northern District of California jurisdiction over VTI. (*See* D.I. 62, 63).  Invensense's principal place of business, Sunnyvale, California, is in the Northern District of California.  Thus, since the defendants request transfer to courts in which the cases could have been brought against them, I must consider the merits of their arguments.

The Third Circuit has set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."
>
> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).
>
> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in

---

³ I find this to be so notwithstanding the allegation in the Complaint that Kionix's principal place of business is in New York City, which Kionix admitted in its Answer. (Complaint, ¶ 4; D.I. 18, ¶ 4).

⁴ At oral argument, counsel for plaintiff agreed that defendant VTI did not have its offices in Michigan. (D.I. 61, p. 50).

the alternative forum).

The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

In my view, interest (1) supports the plaintiff's position that the cases should not be transferred. Interests (2), (5), and (8) support the defendants' requests to transfer the cases. The other interests are either inapplicable to this case (7, 10, 11, 12), possibly applicable but not well-developed in the record (4, 9), or applicable but pretty evenly-balanced as to which side they support (3, 6).

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in the plaintiff's favor, although not as strongly as it would if the plaintiff had its principal place of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'"). Wacoh's principal place of business is in Japan.

Defendant Kionix's preference is the Northern District of New York, where it has its principal and only place of business. Defendant VTI's preference is the Northern District of California, which is significantly more convenient for VTI than Delaware is. Defendant Invensense's preference is the Northern District of California, where it has its principal and only

place of business.

Where the claims arose is not a factor that adds much to the balancing. To some extent, the claims arose where the allegedly infringing products were designed and manufactured. For Kionix, that is the Northern District of New York. (D.I. 40, Galvin Decl. ¶¶7 & 8). For Invensense, which designs its product in Sunnyvale, California, and has it manufactured in Asia (D.I. 44, Nasiri Decl. ¶¶ 3, 4 & & 7), it is the Northern District of California. VTI appears to be a sales operation consisting of four individuals in Pasadena, California, who sell a product designed and manufactured outside the United States. (D.I. 45, Smyser Decl. ¶¶ 3 & 5; D.I. 49, Caldwell Decl., Exh. A4). It is also true that the defendants Kionix and Invensense seek to sell their products worldwide, and thus it could also be said that the claims have arisen wherever the products are sold. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). On the whole, under the facts of this case, "where the claims arose" does not add any independent weight to what is taken into account by other factors such as (4), (5), and (8).

The plaintiff has ten employees. The defendants have 180, 4, and 112. No information is presented about the financial condition of any of the parties, and therefore this factor does not carry significance in the analysis.

At this juncture, it's hard to tell who the witnesses might be. It seems likely that the bulk of the non-expert witnesses will be present or former employees of the three defendants. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Employees are, and ex-

employees most likely would be, located in California or New York.[5] No witnesses from Delaware have been identified, and it is unlikely that any such witnesses exist. *See Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F.Supp. 2d 321, 332 (D.Del. 2009) ("The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer.").[6] Employees will be available in whichever forum a trial is held. Ex-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) would not be subject to this Court's subpoena power, but would likely not move out-of-state and therefore would continue to be subject to the subpoena power in the Northern District of California or the Northern District of New York. Thus, the "convenience of the witnesses" favors transfer.

Similarly, it's hard to tell where most of the books and records would be. It seems likely that the bulk of them would be in California or New York. *See In re Genentech, Inc.*, 566 F.3d at 1345. No books or records are in Delaware. The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. In any event, there are no records identified as only being available in one of the two locations. Thus,

---

[5] To the extent there are employees in Asia or Finland, it would be inconvenient for them no matter where the trial were to be held.

[6] Kionix in its Answer to the Complaint asserts as an affirmative defense that the "prosecution history" of the '823 patent "bars" the infringement claim. (D.I. 18, ¶ 25). Kionix states that the law firm that prosecuted the '823 patent is located in New York City and is subject to the subpoena power of the Northern District of New York but not that of the District of Delaware. It is certainly likely that a lawyer from the firm will be deposed; it is somewhat more speculative that the lawyer would actually be presented as a trial witness, and therefore, while this is a factor that favors transfer, I cannot accord it much more than marginal weight.

under Third Circuit law, which I must follow,[7] the location of the books and records is a neutral factor.

Enforceability of the judgment is not an issue.

Practical considerations that could make the trial easy, expeditious, or inexpensive are somewhat mixed. On the one hand, it seems clear that it would be less expensive for the defendants to litigate where their operations are. It would also interfere less with the defendants' business operations if there were no travel to Delaware involved. Invensense avers, without contradiction, that some of its records might have to be viewed on location due to software and secrecy considerations. (D.I. 44, Nasiri Decl. ¶ 4). On the other hand, it seems likely the plaintiff's litigation expenses would probably increase a little, as it would be pursuing the litigation in two courts rather than one.[8] While it seems that California is significantly closer to Japan than Delaware is, any travel from Japan to the United States is going to be a significant undertaking, *see In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009), and thus, while I recognize flights between San Francisco and Japan are shorter, and probably more frequent, than flights between Japan and Philadelphia, I do not view a move from Delaware to California as representing a significant convenience for the plaintiff. (And, for the case with Kionix as a defendant, the travel time involved in traveling back and forth to the Northern District of New

---

[7] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

[8] Since I have severed the defendants, the relevant cost comparison would be to the cost of having two separate trials in Delaware.

York is essentially the same as to Delaware). Kionix points out that its counsel is admitted in the Northern District of New York, and it appears that Invensense's counsel is a member of the California bar and based in the Northern District of California, and thus, for the two of them, the litigation would offer the cost savings of not having to retain local counsel. In thinking about the overall expense of litigation, it seems likely that putting the litigation in two different fora would substantially reduce the expenses and inconvenience for the defendants. On the whole, I expect it would increase the expenses and inconvenience to the plaintiff, but not to the same extent as it would reduce them for the defendants. *See id.* at 1345. While there are assertions about the time-to-trial in the different locations, the presentations do not persuade me that I can safely come to any conclusion as to which locations would be more expeditious. *See id.* at 1347.

The relative administrative difficulty due to court congestion is also difficult to assess. I do not believe that the analyses of caseloads have been presented in a way that allows for any meaningful conclusion. *See id.*

The "local controversy" consideration is inapplicable here. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 207 (D.Del. 1998). While the defendants have their primary operations in specific localities, Kionix and Invensense seek sales worldwide, and, although VTI states that "the majority of [its] sales activities occur on the west coast of the United States," (D.I.45, Smysler Decl. ¶ 4), this somewhat cryptic statement does not serve to limit the scope of its actual sales. Further, there is evidence VTI is affiliated – perhaps as the U.S. distributor -- with a much larger Finnish company (D.I. 49, Exh.A-4), which diminishes any "local controversy" aspect for it.

The public policy of Delaware encourages the use by Delaware corporations of Delaware

as a forum for the resolution of business disputes.[9] Here, however, the corporation that has chosen Delaware is not a Delaware corporation, and the corporations that might want to claim the benefits of being a Delaware corporation do not want to do so in this case. Thus, I do not see this factor as having any weight in this case.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

The defendants' motions implicate the public interest in the efficient disposition of litigation, since the lawsuits that would have been handled by one judge, perhaps with some efficiencies under Fed. R. Civ. P. 42(a), would, if transfer were to be granted, be handled by two judges. On the other hand, since the suits involve different patents, and have now been severed, the efficiency of having one judge hear both suits might not be very great. *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).

Having considered the *Jumara* factors, the balance of convenience favors transferring the cases as requested. Whether the balance is sufficiently great to outweigh the plaintiff's chosen forum is the issue. In this regard, I must consider *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).[10] There the plaintiff (a Bermuda corporation) sued in the District of

---

[9] The State of Delaware Division of Corporations, on its website, prominently asks, "Why Choose Delaware as Your Corporate Home?" The answer follows: "More than 900,000 business entities have their legal home in Delaware including more than 50% of all U.S. publicly-traded companies and 63% of the Fortune 500. Businesses choose Delaware because we provide a complete package of incorporation services including modern and flexible corporate laws, our highly-respected Court of Chancery, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations."

[10] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1223. The law of the two Circuits in regard to how to conduct a transfer analysis is different in a number of regards. Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor

Delaware a Delaware corporation with 130 employees. Delaware's only connection to the case was that the defendant was a Delaware corporation. "Nearly all" of the defendant's 130 employees worked at the defendant's headquarters in the Northern District of California. The plaintiff was a holding company, and an "affiliate" of the plaintiff employed the patent's inventors and "presumably" housed the relevant documents. The affiliate was also located in the Northern District of California. On this basis, the defendant moved to transfer the case to the Northern District of California. This Court denied the motion. The Federal Circuit granted a writ of mandamus, holding that it was not just an abuse of discretion to deny the motion, but a "clear" abuse of discretion.[11] The Federal Circuit stated that this Court "placed far too much weight on the plaintiff's choice of forum," that its "heavy reliance on the fact that [the defendant] was incorporated in Delaware was similarly inappropriate," that this Court erred in "improper[ly] . . . ignor[ing]" "the convenience of the witnesses and the location of the books and records," and that it "erred when it found that consideration of the public interest factors did not favor either forum."[12] It then issued the writ of mandamus and directed transfer of the case to the Northern District of California. The conclusion I would draw from *Link_A_Media* is that when a plaintiff sues a defendant in District A and the plaintiff, the defendant, and all the potential witnesses and

---

in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."

[11] As the Federal Circuit noted, "there are cases where to hold a trial court to a meaningful application of the [transfer] factors presents only one correct outcome." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). The only way to interpret *Link_A_Media* is that it was such a case.

[12] This included that the inventors of the patent were employees of the related company and worked in the Northern District of California.

-12-

evidence are located in District B, and there is no other valid reason for denying a request for transfer to District B, it is an abuse of discretion not to grant the transfer. There is a meaningful distinction between *Link_A_Media* and this case in that the *Link_A_Media* plaintiff had substantial connections to the transferee district (that is, that its affiliate and its employees, including the inventors, were located there), which is not the case here. Thus, I do not think that *Link_A_Media* compels the conclusion that transfer should be granted. Considering, however, that the *Link_A_Media* Court concluded that the denial of transfer was a "clear abuse of discretion," it seems unlikely that denial of a transfer under the facts of this case would be considered the most appropriate exercise of discretion.

The only connection to Delaware in this case is that it is plaintiff's choice of forum – which since plaintiff is a non-Delaware corporation with no connection of any kind to Delaware, is not entitled to "paramount" consideration – and that the defendants are Delaware corporations, which is not a "dispositive" factor. *See In re Link_A_Media*, 662 F.3d at 1224. In my view, the balance of convenience tips enough in the defendants' favor that I will transfer the case against Kionix to the Northern District of New York, and transfer the case against VTI and Invensense to the Northern District of California.